My name is Barry Morris. I represent Charles Head. I'll be discussing two issues this morning. One, the double jeopardy issue and secondly, the speedy trial. I'd like to reserve five minutes for about an hour. This case is a little strange because usually when errors come before this court, they come out of necessity. Either someone moves to evidence, is objection is moved upon, or something happens in trial, which structures something like that. In this case, both of these issues could have been easily resolved at the trial level. Judge Mueller was told that she could amend her findings in the Speedy Trial Act and that would cure the error. She absolutely refused to do that. Secondly, there's no reason to have two indictments in this case. It could have all been better if one indictment didn't try a lawyer and try and wind up the evidence before it was used. It could have taken care of the whole problem. So, with that remark, I'd like to move on to the speedy trial issue. The most important thing about the speedy trial issue in this case is that the court absolutely refused to go against the suggestion to amend her findings on the speedy trial issue and add the required ends of justice finding. She absolutely refused. And as the moral case points out of the 8th and 11th Circuit, the assembly judge refuses to make any ends of justice finding. There's no basis for concluding that the judge found that there was sufficient evidence and that the reasoning was sufficient to support the ends of justice. In this case, the statute is very explicit. The statute says that the findings must be made on the record that the ends of justice require that time be excluded. It says that in Zedner, it says that in Plough, the statute says that there's no ambiguity. In my reply brief, I cited six cases out of the First Circuit, the Second Circuit, the Third Circuit, the Fifth Circuit, and the Tenth Circuit. All of which explicitly held that if ends of justice findings weren't made on the record, that the time can't be excluded. Most importantly, the government has not cited a single case that says that you can avoid making those findings. What makes this case a little different. Is there any doubt in your mind that defense counsel did that ends of justice were measured? I don't, I can't speak for defense counsel there. What I can say is that the statute requires that the findings be made on the record. Not that everybody assumed that that's what the judge was getting at. You're not arguing here that the delays were unjustified. That the trial really, this case was so easy that the trial should have happened sooner. You're not arguing that, are you? Not specifically. You're just contesting the way it was explained. Well, I'm contesting that the findings were not sufficient or an exclusion of time. But findings could have been made. You're not contesting that. No, no, no. That's actually, that's my first point. This all could have been corrected by the court at the time when the government said, oh, please make the ends of justice finding now. That's okay. They said there's something that you can do it after the original finding is made. And she refused to do that. But why can't we just read the use of these codes as saying that she found that these reasons in the codes indicated so that the ends of justice were met by giving an extension? Well, first of all, what we have here, it wasn't just Darryl. So Judge Darryl made two of them. She made one of them. What we have is T2 and T4. That includes five different varieties of reasons for excluding times. We have no idea which one of them the judge found sufficient to meet the ends of justice requirement. There's no indication. Moreover, for instance, T4, that refers to subsection 4, there's three possibilities under subsection 4. Well, some of them were an issue in the request that had been made, right? Can we tell for the record what the lawyers were asking for and why? No. Because as the judge has to make his findings, this court can't imply that findings were made because T4, which is to give an example, if you look at the actual, you know, I cited somewhere in the excerpt of the record, if you look at the actual rule of court there, it doesn't include everything. It doesn't include, first of all, there are two. T4 says continuance granted in order to obtain or substitute counsel in a reasonable time to prepare. So isn't it reasonable to think that if they needed to continue? The third one is continuity counsel, but it's not in T4. Moreover, the subsection, statutory subsection requires a finding of diligence. That's not there either. What would T4 mean? T4 is a factor. T4 is something that can justify and is a justice requirement. But the judge doesn't find that because, you know, frankly, I do like trial work. I mean, you can tell me the judge is going to continue. Nobody says anything about the public or the right to this, you know, that gets removed from the law, except maybe the judge. The lawyers are talking about why they need to attend to explicitly another court or I'm supposed to go on vacation, right? There's more work to be done. But nobody is thinking about whether or not the ends of justice should justify excluding time. The only person that can do that is the judge. And it's not that the judge doesn't do it. It doesn't count. The Supreme Court does. And the judge doesn't make those kinds of judgments. It doesn't count. You can't exclude time. So I take it your client, there's nothing correct here, but I take it your client never demanded this be a trial. Well, at the time, these motions were pending. You didn't independently say, look, I want to go to trial. I don't care what my counsel thinks. No. Because we see cases like that. So everybody is going along and your client is represented by counsel who says we need this continuous, right? Yep. And then we get to the end, and you say, okay, now we think we've got it set up as a trap because the judge didn't make findings, and now we should get to the task. The judge insists upon the bench. He has no mind. He doesn't read the statute. He doesn't follow the Supreme Court law, and he doesn't know that he has an obligation to make an indecisive finding. And when it's pointed out to the jury, the judge refuses. Amaro says under those circumstances, where are you pointing to this pointing out to the judge that the refusal can be pointed out in the record? The refusal is in our order. Which order can you point to? I can't tell you off the top of my head, but the order is in the excerpts of record. She's in a written order. Do you mean after the subpoena trial? After this all happened, and then the family is indismissed because the subpoena trial issue is now what you're referring to or something along the way, or someone said, I don't know what you mean by this quote. Could you explain? No. In other words, what happened is that these various hearings have happened. The judge said 2-2-2-4. Then at one point, they make a motion, a state trial motion, and she says I'll take that as a submission, and then she issues her order. So by that point, it's after the fact, right? Yeah, but you can do that. Zegner says you can keep the title in the agreement. It's a good idea. But Zegner says you can make what is challenged, you can make that finding in that time, and she refuses to do that. I'd just like you to tell me where she refuses and how you know that she's not just saying, I think I already essentially made the finding. Let me give you a minute to see my brief, but she says that very specifically. Okay. Let's go ahead and move on. Judge, if you'd like to spell that or brief on that. I don't want to waste the court's time on where it says in the order, but it's in a typewritten order that she issued. Okay. Now I want to move on to the don'ts avenue. And this one, again, is sort of astonishing because at the beginning of the trial, an opening statement that this being the prosecutorial dictionary, that this is the same thing that the same defendants have done before. Everything about the first trial is repeated in the second trial. For instance, when they search my client's house, they find a sales pitch, a printed sales pitch, which everybody's supposed to follow in convincing someone to sign the papers. It's the same sales pitch in the first trial, and it's the same sales pitch in the second trial. And in disconcern, the prosecutor argued that it was the same plan. Indictment. The language of the indictment tracks the language of the second indictment tracks the language of the first indictment with some amendments, so it's not called a closures or rescues scheme. It's something similar. So if they choose some language, you will get it quickly. And it looks a little different than what we're seeing. Why did any of the defense counsel attracted say this is a double jeopardy? That's a 64,000-dollar question. I don't have a clue, because I already read the transcript. It's like, what is the objection? I mean, isn't it possible it's because people thought there were two conspiracies? It's a question that everyone who was going along understood it that way, and then for the fact that no one objected, it's evidence that we could understand it that way. Well, you know, I just didn't read the minds of a trial counsel, and I don't know precisely why there wasn't an objection. The government suggested that. It wasn't that we had one conspiracy introduced into the trial to show intent, knowledge, and motive of the defendants. So shouldn't a prosecutor be saying exactly what the prosecutor said in this case? I'm not sure I understand your question. You seem to be saying it's one conspiracy, and it violates double jeopardy, as the prosecutor said in sort of like opening statement of we had two trials. Oh, yes. I said the same thing before. Yes, you said the same thing. But there are certain defendants that are common in both. Right. You had one trial and then two. Right. And so the conduct that you have in HIT 1 can be used against those defendants in HIT 2. I'm not alleging that that was error. It's a double jeopardy issue. They just tried the same conspiracy twice. How about you actually argued in this case that you could have looked at this as two conspiracies, one to defraud the homeowners and one to defraud the lenders, and if that's true, then that's two conspiracies. I really am struggling with how we ever know that there's only one possible way to define, of course, the conduct of a single conspiracy or more than one conspiracy. That's argued in HIT 1 and HIT 2. That argument is not presented. It could be. I mean, if you're saying it's the same conspiracy, so if that's true, then they could make the same argument. I don't understand. All right. Look, it makes a difference. What they're saying is that the nature of the conspiracy alleged are really two conspiracies. It's not in terms of time, but a conspiracy to defraud the lenders and a conspiracy to defraud the homeowners. It's different than the double jeopardy issue when you're trying the same person at the same time twice. That's very different. And how do you do that? My point is I'm not sure what the law tells us, but when someone has done a series of acts in conjunction with a different group of people over time, that there's only one possible way to define this. There's only one possible conspiracy theory you can make. It seems like your own argument is, well, we could have called this two conspiracies and we don't know which one the jury found. So the government tried it in a different way. But it seems like I'm just going to support it. It's different. It's a difference. One is dividing the objects of the conspiracy. The other is charging the same conspiracy twice. He could have made it twice. See, why is it charging you twice? Let's say this is a different case. Let's say it's a bank robbery. So they get the burglary tools and it's a house, and the prosecutor prosecutes two bank robberies. Look, they're using the same burglary tools that the second bank robberies were on the first. That's not a double jeopardy. Well, yeah, because it's not a conspiracy. Talking about coming up can be a conspiracy. For example, the difference is it's not a conspiracy. It didn't go 8-9 planning to do something. We are talking about two separate cases that happened on two separate occasions. But there's separate houses here. So, I mean, there were lots of different mortgage fraud incidents involving lots of different houses. So there's lots of different banks. It's only one conspiracy, though. Well, that's just your assertion, though. How do we know that? Because the government said it is. The government said the same thing the last time. So they used the same promotional material twice in two conspiracies. Because a burglary, when you have two burglars. So it's a conspiracy to commit a burglary. It's the same theory, isn't it? Well, it's no. If it's a conspiracy, and the conspiracy, the object of the conspiracy was to burglarize houses in your county. And they named a number of houses, okay? And then the same people have also burglarized other houses. You can't separate the conspiracies. Otherwise, you'd have multiple conspiracies. Maybe you do not. Well, then you have to be trying the same embankment. Unless there's something about the multiplicity that requires it. See, in the first case, the argument was the judge should have instructed that there were two objects in the conspiracy that were different. That's different from double jeopardy, where they're trying the same thing, trying twice. They used the same materials. And you can check their paper record. If you look at page 30. But they have charged in a single indictment two separate conspiracies. Do you think that would have been better than what happened here? Charged two separate conspiracies. Well, I'm not going to try my luck to do that. And when you say, because we all want indictment, I'm not going to try my luck. Oh, it was over indictment. Yes, there was a conspiracy to defraud homeowners. And instead of 12 in one case and four in another case, there's 16. That makes it a conspiracy. And one case tells us that that has to be the only way to understand this course of conduct. Well, that's a world of my career, Your Honor. If you want me to answer that in a letter brief, I'd be more than happy to. But this, you know, the kids arbitrarily divide a conspiracy into multiple cases. If you look under Blomberger and under the so-called double jeopardy cases, a prosecutor can create multiple cases where there's really only one. Here's one conspiracy to defraud homeowners that got arbitrarily divided into two. And if you go through the URL. But maybe what you're saying is there was only one agreement. And then they just kept pursuing the conduct in pursuit of that agreement. But I'm not sure how that works when new people join. There must have been some new agreement. No. No, because you can have people come in and out of the conspiracy at all times. And it doesn't change the actual conspiracy. In the conspiracy, it was my client. There were three other people who were charged in both. And they were the core conspirators. I mean, it's not a different case. If there are new guys that deliver stuff or a new guy to go deliver papers, each one is a conspiracy. That doesn't change the conspiracy. It just means there's a new participant. People come in and out of conspiracies all the time without changing the nature of the conspiracy. And I have three minutes left. I'm going to call it three minutes. Well, actually, Reggie, you're going to recall Council's time. But we'll go again. We've agreed. Well, we agreed. I thought the clerk did. All right. Okay. Very good. I had a note here that you were going to argue. So, apparently, that's okay. We have a different note here. So I just want to make sure you are not going to argue today. Right? Okay. Very good. Thanks. Good morning. May I please support Mike Landerson on behalf of the United States? I was trial counsel in both cases. Head one and head two involve different conspiracies because they involve different agreements. In head one, Charles Head entered into what was essentially a partnership. He worked mostly with friends and family. All of those individuals knew the fraud from start to finish, and they split the proceeds from their California victims for the most part 50-50. Head two was a far more sophisticated scheme, and it occurred on a national level. Head left behind most of his co-defendants from head one. He created a different organization, an organization that was designed to restrict the information available to the employees who were working for him through the use of compartmentalization and siloing of information, and then also to grab a much larger share of the proceeds, taking the split from 50-50 to a 97-3 split. Other differences flow from those different agreements. The entities used were different. For example, funding foreclosures was formed. In contrast, the entities that were used in head one, which were a series of straw companies that were created and other entities created by co-defendants, matrix investment, financial services. The way that money went through bank accounts changed. The way that financing was done for the properties changed. The way that down payments were done changed. The types of false statements made in the loan applications changed. The way that brokers were used to recruit. The way that they had straw buyers changed. Even the relative size of the organization changed. If you look at the indictments, head one looks like more people are involved, but in reality, when you look at the record, head two had more victims, more employees, but the difference was the siloing kept those employees from being criminally culpable or knowledgeable. Why did the government think Mr. Head wanted to form a second conspiracy? It's a much better scheme. He's able to make more money. He no longer has to share money with many of the people that he was sharing money with before. Many of those people were tired of sharing money with Mr. Head, so he was able to create an organization that he had more control over. It also gave him more insulation, and that comes to your earlier comment about the 404B evidence. We introduced 404B evidence in head two because, unlike head one, where there was a lot of individual involvement by trial set, either with victims or with sales staff, he was able to insulate himself much more significantly in head two, which meant that the 404B evidence was particularly useful for showing his knowledge and intent of the way that the scheme worked and the false statements that were being made. So that was the primary benefit for him for changing the organization. And, of course, the people changed by a large part. He kept a few key employees, but he had new people who were very essential to head two, and many of the people that were essential to head one, like his brother, Mike Head, were no longer involved. Did he have a falling out with his brother? Yes. They had a tumultuous relationship. There were some e-mails introduced to trial. They obviously had some issues stemming from before the fraud, and then during the course of the fraud, many of the people involved appeared unhappy with the division of responsibility, division of money in the organization, which helped explain why he wanted a different organization for head two. So if there are no further questions on that issue, I'll move to the Speedy Trial issue. The Speedy Trial issue, the defense seems to be arguing that the statute requires specific words to be said by the judge. In this case, the defense asked for continuances. A very thorough record of the need for those continuances to allow for preparation was made, discussing discovery, discussing what was being reviewed, motions that might need to be filed. The district court even asked questions like, when are we going to set this for trial, showing an interest in getting this case moving along. And then the court made a finding based on the local code saying that at the hands of justice were men. The court did it by referencing the local code. There's nothing in the statute that requires the court to atone a specific phrase, which is what the defense was arguing as much as to dismiss. With respect to the issue that defense counsel brought up about health, the judge having an opportunity to, I guess, cure the record, motion and option was filed with the court to make more detailed findings after the motion to dismiss was filed, and the court found that that wasn't necessary and issued its order, which is excerpts of record from head one and pages 186 to 204. And that order found that the findings were made and that it was sufficient. That's consistent with the case law in the circuit, and then also consistent with the unpublished opinion that was issued in the Pauley case, which dealt with the same order. The code issue is a little bit unusual, and I don't think I've seen, maybe there are other districts that use a code, but this is the first time I've seen it. Are there that many speedy trial findings that they have to actually put a code in their general orders? I don't know if you have to versus referring to the statute, but the court has done it. It is useful in the district. It's useful for the minute orders. It's useful for conversing with other counsel. I can understand maybe not every district would want to do it, but it's certainly sufficient. Everybody knows what's being referenced. It's just as though you're referencing 18 U.S.C. 3161 H7B3 or B2. You can reference T2 instead. So it's just a shorthand that's used. And it's available. It's publicly available. It's in the orders of the court. If there are no further questions, I'm going to keep going here. I'm going to give you three minutes. Thank you. First, the issue with Judge Sawyer, which was covered by my colleague. The court issued a double-trip in the interim. There are no factors. There are five factors. Every one of the factors is clear that this is one crime and should have been more indictment. It's the same crime. It's the first thing on the board. The timing. He concurred over basically the same period of time, 12 of the 15 months that Head 2 was in operation, Head 1 overlapped. So that factor is in there. In fact, 50% of the witnesses in Head 2 came from Head 1. The location. It's all in East District, California. The personnel, the court personnel didn't change. My client was still the leader of the band. Gu Yang, John Carpenter, and Dominic McTerrance, all were in both. They were the central players. They were the same in all of them. Overacts. They were the same. They weren't exactly the same because the prosecutor is the one who drafts them, so they move them around. You can either pick an overact for a mailing or you can do other things. But, you know, they're the same kinds of overacts. So under the Arnold Families, which this court has adopted to determine whether or not this is a double buck or a jeopardy violation, each one of the five facts, this case fits squarely within them. There's no variation. But most importantly, what I do understand is why this was done. There's no reason for it. Due to Rule 14, you can sever a defense for trial. You know, granted, it's not going to be a good trial. But you can sever them into groups. When it's stepped into a separate trial, it's not a crime. When I trial twice, the same crime. Exactly the same crime. What Nelson described there is that the supposed variations between the two are not variations in the conspiracy, but the way that they apply the conspiracy theories. Everything was the same. The homeowners were told that they were going to stay on the deed, that, you know, there's no going to be a refinance, but it would approve. As I said, the exact same sales pitch was used in both. I can't think of a better way of identifying the identity of a conspiracy than having something written in the hand of the main conspiracist. This is what we're going to do. And it was introduced in both cases by the government as being the plan behind the conspiracy. So it's a same crime. It seems to have been done, well, 17 seconds ago. Do you have the speech? I don't remember. Thank you. You both can speak for your arguments. The case to start here will be submitted for a dissent. It will be in recess. We'll return informally after the conference.
judges: Thomas, Friedland, Carney